If there was no objection, doesn't that raise the standard of review somewhat? I don't think so, Judge. I think the court had the duty to ensure that undue influence is not placed on any kind of testimony that's read back to the jury or reviewed by the jury during the deliberation process. Was there any challenge to the accuracy of the material that was about to be read back? No. There was no challenge to the accuracy of the material that was read back. Did you ask for anything else to be read back to balance out the testimony that was read back? No, I did not. The only thing that was read back was your client's testimony? A portion of my client's testimony. Under our precedent, who would be reviewing this for plain error? Is that not correct? I believe that's correct, Judge. Are you considering that? Well, I'm not trying to give you too much evidence you're not making, but I thought I heard you about a minute ago say, well, I want the objection that you raised. If I'm going to make sure I understand the sequence, the jury comes back and says, we're having difficulty deciding. We'd like to have a transcript of the testimony. The judge consults with counsel, and both counsel and the judge agree that the answer that's going to be read back is going to be, there's no consequence there. We have to allow any memory. Then later in the day, the jury comes back and says, we're deadlocked. And that's when the judge says, well, we can read you back your testimony. Or we'll close the deadlock. And are you not arguing that you said in your earlier statement, the first time the jury came back, it's sufficient to present an objection to what happens later in the day? That's my position, Judge. But that's my position throughout the whole thing, that we should not read back any of it. There's no transcript of it. So you have to go and continue your objection. And if we accept that, which I'm not sure we will, but if we accept that, then it would not be played out of review. It would seem to be manually out of review. Yeah. Thank you, Your Honor. Well, let me back up again for a second and ask you precisely what it was that was read back. It was a, it was a, let me back up and give the description of what happened a little bit more precisely. The jury asked for the defendant's testimony. The court responded to the... I understand. Okay. But it was the defendant's testimony that was read back. It was a portion of the defendant's testimony. And I'm already asking the questions. Me. And so you're objecting that unduly influenced your own client's testimony with questions asked by you? I am. I mean, wouldn't it seem that if you had elicited this information from your client, you could have been happier to have it read back? No. But that was your defense. No, that's true, Your Honor, but... So why isn't it true here? I mean, usually the cases that we have, you read back an accomplice's testimony, a victim's testimony is, this unduly emphasized the prosecutor's case. And that's not fair. Here, what was emphasized was your case with questions asked by you. And I find it a little bit unusual to discover a case in this posture. I understand that, Your Honor. You're complaining that we emphasized your defense. I'm complaining that the jury placed undue influence on a portion of my client's testimony. That's why I asked you earlier. I have no context to the whole testimony. See, that's why I asked you earlier. Did you ask for other parts of it to be read back to balance out the context? I did not. I did not. There's no reason why not. Well, let's get specific and tell us exactly what the thrust of this testimony was. It had to do with... The nation to charge was that my client, an officer in a municipality close by the border near San Luis, Arizona, transported marijuana and trucked his car across the border from Mexico. And this testimony had to do with his co-conspirator, his alleged co-conspirator, who was in the car with him, who actually had taken his car to Mexico the evening before. And the whole issue of trial was my client's knowledge of marijuana. And this had, the question the jury asked for, had to do with what was going to happen. You mean your client was the driver or the passenger? My client was the driver. But the passenger had taken the car to Mexico the evening before, not my client. And the alleged co-conspirator was in the car when he was arrested? Correct. Correct. He went to Mexico the following day with the co-conspirator to retrieve his car. And the question had to do with what he was going to do at this establishment called the Casa de Cambio after he was dropped off there by the alleged co-conspirator. Whether he was going to stay there with his car or whether the car was going to be taken someplace else. And the context of this, this had originally arisen with a question that the customs agent had asked my client. And the customs agent testified that my client said that he was going to stay there with his car. And my client on the stand said no. If your client denied that, that would be your question? Correct. And that's the part that you are conflating about? Correct. If your client's denied it. Right. You want that emphasized. It's out of context I'm going to emphasize. What's the context that you think should have been there to balance this out? I think the context should have been the replaying of the entire testimony, which would include the discussion of what the question was from the customs agent regarding... Do you think the court's sua sponte, without your request, should have added that? Yes. What case do you have that requires a judge under circumstances like this to have context that you don't ask for? Well, what I'm relying on, Judge, are the cases of Hernandez, but mostly Hernandez, in which, or Sacco, or cases in which they were given, jurors were given testimony, both either complete testimony or portions of direct and cross. They weren't just given a particular portion of it. And I'm also relying on the cases of Binder and Sandoval, mostly Binder, where the court indicated that it's problematic when you give the jury just a sliver, a slice of the testimony, especially in this case, like in Hernandez, where the jury's focused in on a particular part of the testimony. They said, we want this specific part. They've already indicated their intention to... Yes, and I don't have a problem with that, but the cautionary instructions as for Lujan were not given in this case. Did you ask for them to be given? I did not ask for them to be given. Do you want to save two minutes for a vote? I'd like to. Thank you. We'll now hear from the government. Good afternoon. I'm Michael Morrissey from the District of Arizona, representing the government in this appeal. Nowhere in the record does there appear an objection to the manner in which the district court handled this. In fact, at ER 86, the defense counsel states that he believes that the judge's first response to the jury was appropriate. And what are the consequences of no objection? It should be plain error review. You did not ask for plain error review, though, in your brief, did you? I believe we did. In our statement of the standard on appeal, we noted abuse of discretion and then stated... Well... Then stated what? In a deleted section. No, I'm not kidding. The court is correct. You probably should have said plain error, but you didn't. You decided we'll handle it on an abuse of discretion standard. Yes. So did you waive the waiver? Did I waive the waiver? The danger of putting things in writing. Yes. Well, the government is comfortable under an abuse of discretion standard. This court, however, can affirm for any correct basis in the record and therefore plain error review, since it is plain in this record that there was no objection made. Well, it's not clear to me. I mean, you have to ask for plain error review. I mean, if you didn't preserve that on appeal, it's sort of like not raising an objection below. It's waived. It lies not in your mouth to argue that counsel muffed it when you muffed it yourself. We got one scribe from each side. I was certainly... Two more in your book. I was certainly conceded the point that the backup standard review plain error is not in the government's brief at page 19, which is where we discussed standard review. It's not anywhere else. Correct. It's not anywhere else either. I would also note that in terms of any objection or out of context, the jury at first asked for the entire testimony of the defendant, and the defense counsel did not want the entire testimony. I said they asked for a transcript. Yes. And the transcript just wasn't available. Exactly. I gather it could not have been made available very quickly. Well, it could not have been made available. In fact, even as the process unfolded, what happened was a readback of 17 lines of testimony, and this court has cautioned in other cases that one of the difficulties with rereading testimony or replaying case is the length of time that can take. In this case, it wasn't a particularly lengthy process to isolate the testimony. There are two dangers. The one danger is that you're going to spend too much time on it, but the opposing danger is that if you focus, if you bore in too narrowly on particular part of the testimony, the jury might do that which the jury is not going to do, and that is to give undue weight to a particular part of the testimony. And here you have a particularly difficult case for the government because not only do we have case law that says you really have to give an instruction, you're going to bore in that narrowly, you have to give an instruction, but we have a jury that tells us we are about to hang. We are about to hang. The court calls them in, reads them the testimony, asks one of the jurors to say, hey, does this help you make money? Oh, yes, this helps a lot. So it's hard to say that they didn't give it a lot of emphasis. Well, I would point out two things. One, there were two counts charged against this defendant, and the jury acquitted on one of the counts. That's a demonstration of a functioning jury thinking for itself. Secondly, I would insert into the court's narrative of what happened that this judge at no time directed this jury that you will hear a readback. In fact, while it was not a therapy session, it did turn into kind of an encounter group between the judge and the jury foreperson. Because there's a chance somebody else? Yes. This report stated, is there anything we can do to help you? And the foreperson said, that's a different question. And that, I think, got us away from the specter of the hung jury. But you know, it does not ease my sort of sense of comfort. Courts are not supposed to be encounter sessions. They are places of all procedure. And the reason we do things according to set rules is because we know how the rules operate. We can predict, to some extent, how people will react to them. And we can review them on appeal, you know, so we know what to do. When you have a hang holding session in a courtroom, I'm not quite sure what to do with that. I mean, we are told this is a jury who tells us we are about to hang. So we know that, given all the things that jurors are normally given, a chance to listen to the witnesses, a chance to, I don't know, document their exhibits here, I assume, or even document their exhibits, and a chance to look at those things and all that, they could not agree. And then this thing happens, which is really not contemplated by the rules, and all of a sudden they say, oh, in that case, we'll come back. Well, I don't know if you get it, but it does not give me a sense of comfort. But I believe this court can have a sense of comfort from several factors. No, it should not be a hang holding session. But at the same time, the jury was given the ability to state what it needed and then to use it for itself. It was only a very minor amount of testimony. It was, in fact, testimony enlisted by the defense counsel on direct. And so, unlike other cases, Minor or not, though, every word you say actually cuts both ways, because the narrower the focus, we know that listening to this testimony broke the long jump. So it's very hard, if you come down to one word, we want to read back one word, we would know that one word in that testimony would have made a difference. So the more narrowly the jury focuses on this, the more it starts to run up against our cases, which say, juries, you're not supposed to let one little piece of testimony that's being read back, move on, cases like that, that say you can't let that be dispositive. And yet, right there in the courtroom, the judge asks, and one of the jurors says, oh, that helps me a lot. Well, one thing your cases say, though, is this is a very fact-specific inquiry. For example, Lujan is certainly a similar case in this area, but Sandoval and Felix Rodriguez, both subsequently Lujan, don't mention Lujan. And so, this court needs to focus, in this case, was it handled appropriately? Do you think we need to have an in-bank day in Baltimore? I think you have the facts on this record to decide anything I would favor, so I'm hoping not to ask for that. You know, I sometimes give lectures to our U.S. attorneys and defense counsel in Seattle, and one of the points I make is that it's the obligation of the prosecutor to help the judge do what he's supposed to do. So, I suggest that when you see that curative instruction is required by our case law, you say, now, judge, perhaps you'd like to instruct the jury so-and-so. I don't think there's any other reading on this record other than the district court was not familiar with this court's precedents on the exact best way to handle this, and the prosecutor and defense attorney offered no help. I would note, though, that there are many things the district court did correctly. Your cases have identified the danger of letting the jury do this by themselves back in the jury room, and that's not what happened here. This was done in open court with the presence of the prosecutor and the defendant and the defense counsel. There was no, and I should also note, judge, we did not get a quick verdict after this readback. It wasn't a one-word readback, a 17-line, and then a verdict. In fact, what happened next was the jury had an additional question, and the judge even says on the record to the lawyers, I'm surprised because obviously they weren't really troubled by this one thing. This has taken a long time. It's well over an hour before this jury comes back with a verdict, which on one count exonerated the defendant. So some of the harms identified by the court of an over-emphasis leading to a quick verdict didn't happen. Is it your position that the readback, that the doubt they might have had had been in the count they acquitted and that the readback actually helped the defendant in that case? I don't know how the counts went. There's no question that the readback is consistent with the verdict. The readback went to what would happen after they got into the United States, okay? In other words, the importation count was apparently taken care of. They'd gotten into the United States, and that's the count they convicted on. What was going to happen afterwards, that's count two, was this marijuana possessed with intent to distribute. I can see I'm out of time. My final sentence is, therefore, this jury's question is very consistent with it going to the count that they acquitted on. Thank you. I believe you have about a minute and 58 seconds for the final thing. Well, just with regard to the fact that the portion readback was consistent with the verdict, the jury was deadlocked on both counts. It wasn't like they'd already decided that. Is that clear that it was deadlocked on both counts? Yeah, they were at an impasse on both counts. There was no indication they were ready to decide anything. I mean, they might have had an easy convict on one count, and the whole deadlock might have been on the count where they eventually acquitted. I mean, is there anything in their record to be consistent with that hypothesis? I apologize. Not that I can think of, Judge. Maybe it's my perspective from being there. But it seems to me the court came back, called them into the courtroom, and it was because it indicated that they were at an impasse. For 15 years I've listened to lawyers try to make something out of whether a jury took a long time or a short time to arrive at a verdict. And in my previous 23 years of trying cases, I've found that everything that the lawyers tell us now on appeals doesn't wash. Sometimes they take a long time because they don't want to go back to work. This is why I thought I'd be talking to them. They have the verdict at 9 o'clock, but they want lunch before they go home, so they hang around for three more hours. They were waiting for a baseball game. I mean, the reason that they give you, the design that they give you, is astounding. You rarely have anything to do with whether they were close or what was really arguing the case in the courtroom. Don't believe it. I've been on a jury. It's nothing like that. You didn't want lunch? No, we wanted to get out of there as quickly as we could. We just don't prosecute those flies. You also mentioned, Judge, that this was decided in open court, whereas SACO said that's how it should be done. It should be done in open court rather than giving the testimony to the jury to go look over and over and over again in the jury room. That was done, but in SACO, the situation was different. In this case, credibility was an issue on the issue of knowledge. It was just my client's word versus the alleged co-conspirator. Well, it wasn't that. Your client drove away from the search area and was told to stop. I mean, there was all kinds of uncircumstantial evidence of knowledge. That's correct. I didn't have a good amount of time to answer the court's question. But in also SACO, the defendant didn't testify, so the issue of credibility was never brought up. In this case, my client testified. My testimony was diametrically opposed to the passenger's vehicle. Thank you. Okay, thank you, Keisha. Sorry, we're going to submit it. Thank you.
judges: B. Fletcher, Kozinski, Trott